# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **TERRY KEY SHIVELY** | **CIVIL ACTION NO. 3:17-0716** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **ETHICON, INC., ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

*consolidated with*

| | |
|---|---|
| **CHARLENE LOGAN TAYLOR** | **CIVIL ACTION NO. 3:17-0721** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **ETHICON, INC., ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

# RULING

This is a diversity lawsuit arising out of a products liability claim. Pending before the Court is a Motion for Partial Summary Judgment [Doc. No. 359] filed by Plaintiffs Terry Key Shively ("Mrs. Shively") and Johnny Shively (collectively, "the Shively Plaintiffs") and Charlene Logan Taylor ("Taylor"). Plaintiffs move the Court for a determination that the New Jersey Punitive Damages Act is applicable to their claims. Defendants Ethicon, Inc., and Johnson & Johnson oppose the motion, contending that the Louisiana Products Liability Act applies and bars punitive damages. [Doc. No. 371]. Plaintiffs filed a reply in support of their motion. [Doc. No. 376].

For the following reasons, Plaintiffs' Motion for Partial Summary Judgment is DENIED.

## I. FACTS AND PROCEDURAL HISTORY

Ethicon, Inc., is a business corporation organized under the laws of the State of New Jersey with its principle place of business in New Jersey and is a wholly owned subsidiary of Johnson & Johnson. Johnson & Johnson is a business corporation organized under the laws of the State of New Jersey with its principle place of business in New Jersey.

Defendants designed, manufactured, marketed, sold, and/or distributed the Gynecare Prolift Pelvic Floor System, the Gynecare TVT System, the Gynecare TVT Obturator System, the Gynecare Prolift Anterior, Posterior, and/or Total Pelvic Floor System, and the Gynecare Prolift + M Pelvic Floor Repair System designed for the use in surgery to treat pelvic organ prolapse and urinary incontinence.

The key corporate decisions relating to Pelvic Mesh, including decisions about design, manufacturing, marketing, selling, testing and labeling (which serve as the crux of Plaintiffs' allegations for punitive damages) were made from Ethicon's headquarters in New Jersey. Defendants' Worldwide Director of Medical Affairs for Ethicon Women's Health & Urology is based in New Jersey. The base of operations for Ethicon's worldwide marketing is in New Jersey. Training provided to sales representatives was organized at Ethicon headquarters in New Jersey. Ethicon's sales department operates from Ethicon's corporate headquarters is in New Jersey.

Additionally, promotional materials for Ethicon mesh products were developed principally in New Jersey for use and then disseminated for distribution.

On October 20, 2008, and again on July 13, 2011, the FDA issued public health notifications alerting the medical community that transvaginal placement of mesh devices, such as the Gynecare Systems, could lead to potentially serious complications including erosion of the

mesh material, infection, bleeding, pain, organ perforation, and urinary problems.

Following the October 2008 FDA notification regarding the safety of transvaginal mesh, if physicians had questions regarding FDA notifications, the instructions from Ethicon headquarters in New Jersey were to refer all questions to Ethicon's Medical Affairs personnel, also in New Jersey. Complaints from surgeons, patients or sales representatives that Ethicon's pelvic mesh products are not performing the way they should come into a central complaints group in New Jersey for evaluation and investigation and possible additional testing by research and development.

The Shively Plaintiffs, who are residents of Louisiana, filed their Petition for Damages on August 2, 2010, in the Third Judicial District Court for the State of Louisiana, Parish of Lincoln. The Shively Plaintiffs' Petition for Damages and Amended Short Form Complaint allege that on or about May 8, 2008, Mrs. Shively underwent a procedure in Ruston, Louisiana, and the Prolift and TVT-Oturator products were implanted and caused injury as a result. The Shively Plaintiffs further allege that the products were unreasonably dangerous in construction and composition as they did not meet Defendants' performance standards, were unreasonably dangerous in design because they caused severe problems and an alternative design or treatment was capable of preventing her injuries, that they did not have an adequate warning, and they did not conform to an express warranty. The Shively Plaintiffs assert claims of negligence; strict liability for a manufacturing defect, failure to warn, defective product, and design defect; negligent infliction of emotional distress; breach of an express warranty; breach of an implied warranty; loss of consortium; and under the Louisiana Products Liability Act ("LPLA"), La. Rev. Stat. 9:2800.51, *et seq*.

Defendants removed the Shively Plaintiffs' action to the United States District Court for the Western District of Louisiana, Monroe Division, and it was then transferred to the federal multi-district litigation ("MDL"). On March 14, 2017, the then-presiding Court issued a Memorandum Opinion and Order granting in part and denying in part Defendants' Motion for Summary Judgment. In that Opinion, the Court found that "Louisiana law applies to plaintiffs' claims." [Doc. No. 284, p. 3]. The Court further found that the Shively Plaintiffs conceded the claims of negligence; strict liability for manufacturing defect and defective product; negligent misrepresentation; negligent infliction of emotional distress; breach of implied warranty; gross negligence; and unjust enrichment.[1] The Court otherwise denied Defendants' Motion for Summary Judgment on the Shively Plaintiffs' remaining claims.

On March 31, 2017, the Court also issued a Memorandum Opinion and Order [Doc. No. 286] granting in part and denying in part the Shively Plaintiffs' Motion for Partial Summary Judgment on Defendants' affirmative defenses. The Court again found that Louisiana law applies. *Id.* at p.3. The Court further found that Defendants agreed to withdraw the defenses contained in paragraphs 3, 4, 5, 6, 7, 8, 9, 11, 13, 24, 32, 33, 34, 35, 38, 42, 45, 49, 50, 51, 52, 55, 57, 60, 62, 74, 75, 78, and 79 of Ethicon's Master Answer. Therefore, the Court granted the motion as to these defenses. However, the Court otherwise denied the motion.

On May 8, 2017, the Shively Plaintiffs' case was remanded to the United States District Court for the Western District of Louisiana.

Taylor, who is also a resident of Louisiana, filed her Complaint on October 27, 2011, in

---

[1] Some of these claims were not asserted in the Short Form Amended Complaint, but, regardless, they have been conceded.

4

the United States District Court for the Western District of Louisiana, Shreveport Division. Taylor's Complaint and her subsequent Amended Short Form Complaint allege that on or about October 21, 2008, she underwent a procedure in Ruston, Louisiana, during which the Prolift and TVT-Obturator products were implanted, and she suffered injury as a result. She contends that the products were unreasonably dangerous in construction and composition as they did not meet Defendants' performance standards, that an alternative design or treatment existed capable of preventing her injuries, that they did not have an adequate warning, and they did not conform to an express warranty. She asserts claims of negligence; strict liability for a manufacturing defect, failure to warn, defective product, and design defect; common law fraud; fraudulent concealment; constructive fraud; negligent misrepresentation; negligent infliction of emotional distress; breach of an express warranty; breach of an implied warranty; violation of consumer protection laws; gross negligence; unjust enrichment; punitive damages; and under the Louisiana Products Liability Act ("LPLA"), La. Rev. Stat. 9:2800.51,

Taylor's case was then transferred to the federal MDL. On March 14, 2017, the then-presiding Court issued a Memorandum Opinion and Order granting in part and denying in part Defendants' Motion for Summary Judgment. In that Opinion, the Court found that "Louisiana law applies to the plaintiff's claims." Case No. 5:17-0721 [Doc. No. 292, p. 3]. The Court further found that Taylor conceded the claims of negligence; strict liability for manufacturing defect and defective product; negligent misrepresentation; negligent infliction of emotional distress; breach of implied warranty; gross negligence; and unjust enrichment. The Court otherwise denied Defendants' Motion for Summary Judgment on Taylor's remaining claims.

On March 31, 2017, the Court also issued a Memorandum Opinion and Order granting in

5

part and denying in part Taylor's Motion for Partial Summary Judgment on Defendants' affirmative defenses. Case No. 5:17-0721 [Doc. No. 294]. The Court again found that Louisiana law applies. *Id.* at p.3. The Court further found that Defendants agreed to withdraw the defenses contained in paragraphs 3, 4, 5, 6, 7, 8, 9, 11, 13, 24, 32, 33, 34, 35, 38, 42, 45, 49, 50, 51, 52, 55, 57, 60, 62, 74, 75, 78, and 79 of Ethicon's Master Answer. Therefore, the Court granted the motion as to these defenses. However, the Court otherwise denied the motion.

Subsequently, on May 8, 2017, Taylor's case was remanded to the United States District Court for the Western District of Louisiana.

On November 14, 2018, Plaintiffs filed the instant motion [Doc. No. 359]. On December 6, 2018, Defendants filed a memorandum in opposition to the motion [Doc. No. 371] and response to the Plaintiffs' statement of uncontested facts. [Doc. No. 375]. On December 20, 2018, Plaintiffs filed a reply memorandum in support of their motion. [Doc. No. 376].

This matter is now ripe.

## II. LAW AND ANALYSIS

### A. Summary Judgment

Summary judgment "shall [be] grant[ed] . . . if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

If the moving party can meet the initial burden, the burden then shifts to the nonmoving

party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

### B. Determination of Choice of Law

#### 1. Conflict Analysis

In a diversity suit, the Court applies the choice of law rules of the forum state. *Allison v. ITE Imperial Corp.*, 928 F.2d 137, 138 (5th Cir. 1991) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), and *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). The parties and the MDL Court have all agreed that Louisiana law applies, including Louisiana's choices of laws rules. However, Plaintiffs contends that, under the choice of laws analysis, they can proceed with their claims for punitive damages under New Jersey law, while Defendants argue that these claims are barred.

As a threshold matter, the Court must determine whether there is a conflict between the law of New Jersey and Louisiana. Having reviewed the laws of each state, the Court finds that there is a conflict between Louisiana and New Jersey law. "Under Louisiana law, punitive or other 'penalty' damages are not allowable unless expressly authorized by statute." *Int'l Harvester Credit Corp. v. Seale*, 518 So. 2d 1039, 1041 (La. 1988). The LPLA is clear and unambiguous and does not provide for punitive damages. *See* LA. REV. STAT. 9:2800.51-9:2800.59; *see also McLaughlin v. GlaxoSmithKline, LLC*, No. CIV.A. 12-2946, 2014 WL

669349, at *3 (W.D. La. Jan. 6, 2014) (dismissing plaintiff's punitive damages claim because "the LPLA . . . establishes the exclusive theories of liability for manufacturers for damage caused by their products. A claimant may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth under the LPLA."). In contrast, the New Jersey Punitive Damages Act, N.J. STAT. ANN. § 2A15-5.9 to 5.17, does allow for the recovery of punitive damages in a products liability case under certain circumstances. *See Fischer v. Johns–Manville Corp.*, 103 N.J. 643, 670–71, 512 A.2d 466 (1986).

The Court thus turns to the choice of laws determination.

### 2. Choice of Laws Determination

Plaintiffs cite the Court to Louisiana Civil Code Article 3542, which provides the general rule on resolving conflicts of law in tort or delictual actions, and Article 3546, which provides the general law on the applicability of punitive damages. However, as Defendants point out, the applicable Civil Code article is neither 3542 nor 3546, but Article 3545. The Court finds Article 3545 compels the applicable of the LPLA, including its exclusion of punitive damages, and that this case is not so exceptional to require a different result under the escape mechanism of Article 3547.

The commentary following Article 3542 explains the guiding principles:

> The approach of this Article is further implemented by specific rules contained in Articles 3543-3546, infra, which are a priori legislative determinations of "the state whose policies would be most seriously impaired if its law were not applied". Being more specific, these Articles should, when applicable, prevail over this Article. However, as with any a priori rules, Articles 3543-3546 may in exceptional cases produce a result that is incompatible with the general objective of Article 3542, in pursuance of which they were drafted. In order to avoid such a result, Article 3547 contains an "escape clause" which, when applicable, refers these cases back to Article 3542.

8

Article 3542, Subsection (b) to Revision Comments—1991. Thus, the Court must first consider the specific rule contained in Article 3545.

Article 3545 unambiguously provides that Louisiana law governs "liability for injury caused by a product, as well as damages, whether compensatory, special, or **punitive**," when the injury "was sustained in this state by a person domiciled or residing in this state . . . or when the product was manufactured . . . or acquired in this state and caused the injury . . . in this state." (emphasis added). Article 3545 will not apply "if neither the product that caused the injury nor any of defendant's products of the same type were made available in this state through ordinary commercial channels." *Id.*

Moreover, the commentary following Article 3545 makes clear that Article 3545 takes precedence over Article 3546. The commentary explains that Article 3545 "applies to issues of conduct and safety, to issues of loss distribution, e.g., compensatory damages, as well as to issues of exemplary, punitive, or special damages. Thus when applicable, this Article prevails over Articles 3543 and 3544, supra, **and Article 3546**, infra." *Id.* at subsection (a) of Revision Comments—1991 (emphasis added). The commentary explains further that when, as in this case, the injury occurred in Louisiana and

> the victim's domicile or residence is in Louisiana, then the application of Louisiana law not only passes the constitutional test of *Watson [v. Employers Liab. Assur. Corp.*, 348 U.S. 66 (1954)], but is also amply justified, from the choice-of-law perspective, by Louisiana's legitimate interest in protecting consumers living and injured within its borders. This need exists whether or not the product was manufactured or acquired in this state. Any potential argument of unfair surprise that might be made by the defendant is adequately taken care of by the defense provided in the second paragraph. Besides, the application of Louisiana law may well benefit the defendant if it turns out to be less protective of the plaintiff than, for instance, the law of the place of manufacture or acquisition of the product.

*Id.* at subsection (d) (italics added).

In this case, the facts are undisputed that all Plaintiffs are domiciled in and reside in Louisiana and that the injuries allegedly caused by Defendants' products occurred in Louisiana. Therefore, Article 3545 applies.

However, Plaintiffs contend that this an "exceptional case," under Article 3547, to which New Jersey law should apply. Article 3547 provides:

> The law applicable under Articles 3543-3546 shall not apply if, from the totality of the circumstances of an exceptional case, it is clearly evident under the principles of Article 3542, that the policies another state would be more seriously impaired if its law were not applied to the particular issue. In such event, the law of the other state shall apply.

The commentary again explains that "Articles 3543-3546 were drawn from the general principles of enunciated in Article 3542" and intended to "avoid the laborious analysis required by Article 3542." *Id.* at Revision Comment—1991. In "exceptional cases," these Articles could "produce a result that is incompatible with the principles of Article 3542," so Article 3547 was intended to provide "an 'escape mechanism'" to apply if the Court "is convinced from a totality of the circumstances of the particular case that the policies of a state other than the one whose law is designated as applicable by Articles 3543-3446 would be significantly more impaired if its law were not applied." *Id.* The commentary cautions that "[t]his mechanism should be reserved for truly exceptional cases, and the burden of persuasion . . . should be placed on the party who invokes it." *Id.*

While Plaintiffs make a number of sound arguments to support their contention that New Jersey law on punitive damages should apply, the Court finds that this is simply not the kind of truly exceptional case to which Article 3547 was intended to apply. Numerous products liability

actions are brought in Louisiana each year, and many involve allegedly defective medical products or devices manufactured out-of-state, but which have caused injury to Louisiana residents in this State. While New Jersey certainly has an interest in preventing manufacturers, distributors, and sellers of defective medical products and devices from placing them in the stream of commerce (and likewise of failing to warn of the dangerous associated with such products), this interest is not so great as to transform this into an exceptional which trumps Article 3545. Accordingly, the LPLA provisions apply, and Plaintiffs are barred from seeking punitive damages against Defendants.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment [Doc. No. 359] is DENIED.

MONROE, LOUISIANA, this 27th day of December, 2018.

TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE